1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

7

8

9

10

11

12

DANIEL ROMANS,

               Plaintiff,

   v.

UNITED STATES OF AMERICA,

               Defendant.

CASE NO. C13-5834 BHS

ORDER GRANTING
DEFENDANT'S MOTION TO
DISMISS AND FOR SUMMARY
JUDGMENT

13

14

15

16

This matter comes before the Court on Defendant United States of America's
("Government") motion to dismiss and for summary judgment (Dkt. 22). The Court has
considered the pleadings filed in support of and in opposition to the motion and the
remainder of the file and hereby grants the motion for the reasons stated herein.

17

## I. PROCEDURAL HISTORY

18

19

20

21

On September 23, 2013, Plaintiff Daniel Romans ("Romans") filed a complaint
against the Government under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346,
seeking damages for injuries sustained during a robbery at a federal post office.  Dkt. 1
("Comp.").

22

1   On May 27, 2015, the Government filed a motion to dismiss and for summary

2   judgment.  Dkt. 22.  On June 15, 2015, Romans responded.  Dkt. 31.  On June 19, 2015,

3   the Government replied.  Dkt. 34.

## II. FACTUAL BACKGROUND

5   This case arises out of a robbery at the Silverdale, Washington post office.

6   Romans was an independent contractor for the United States Postal Service, under

7   contract to collect mail from Postal facilities on his route and deliver it to the Tacoma

8   Post Office. Comp., ¶ 4.1.  The temporary post master, Harry D. Kleinfelter, Jr., referred

9   to Romans as a "highway contract route" driver ("HCR driver").  Dkt. 28, Declaration of

10  Harry D. Kleinfelter, Jr. ("Kleinfelter Dec."), ¶ 2.

11  On September 17, 2010, Romans arrived at the Silverdale post office at

12  approximately 6:20 PM.  *Id.* ¶ 4.2.  While transferring the mail from the Silverdale

13  facility into the trailer of his truck, Romans heard a noise that sounded like a ramp

14  breaking.  *Id.* ¶ 4.3.  Romans turned around and saw three men wearing ski masks and

15  dark clothing, and one of the men attacked Romans, forcing him to the ground.  *Id.* ¶¶

16  4.4–4.5. Another attacker jumped on top of Romans and the two men zip-tied Romans'

17  wrists behind his back, while the third attacker tied his ankles together.  *Id.* ¶ 4.6.  The

18  attackers stole the postal register bags, which included daily sales receipts from six other

19  postal facilities.  *Id.* ¶ 4.7.

20  After the attack, a police officer with a K-9 unit arrived at the scene.  The police

21  dog followed a scent trail to a large, unlocked metal container near the perimeter of the

22  post office property ("Connex container").  Romans alleges that the attackers entered the

post office property and remained in the container out of sight until Romans arrived.

Comp., ¶ 4.10.  During a subsequent investigation by a postal safety inspector, the

inspector found a number of "substandard safety features."  Dkt. 31 at 5.  Although

Postmaster Kleinfelter disagreed that the security at the post office was lax, he did

concede that security "could have been better."  *Id*. at 6.

### III. DISCUSSION

**A.     Motion to dismiss**

    **1.     Standard**

A complaint must be dismissed under Fed. R. Civ. P. 12(b)(1) if, considering the

factual allegations in the light most favorable to the plaintiff, the action: (1) does not arise

under the Constitution, laws, or treaties of the United States, or does not fall within one

of the other enumerated categories of Article III, Section 2, of the Constitution; (2) is not

a case or controversy within the meaning of the Constitution; or (3) is not one described

by any jurisdictional statute.  *Baker v. Carr*, 369 U.S. 186, 198 (1962); *D.G. Rung Indus.,

Inc. v. Tinnerman*, 626 F. Supp. 1062, 1063 (W.D. Wash. 1986); *see* 28 U.S.C. §§ 1331

(federal question jurisdiction) and § 1346 (United States as a defendant).  When

considering a motion to dismiss pursuant to Rule 12(b)(1), the court is not restricted to

the face of the pleadings, but may review any evidence to resolve factual disputes

concerning the existence of jurisdiction.  *McCarthy v. United States*, 850 F.2d 558, 560

(9th Cir. 1988), *cert. denied*, 489 U.S. 1052 (1989); *Biotics Research Corp. v. Heckler*,

710 F.2d 1375, 1379 (9th Cir. 1983).

1    **2.    Immunity**

2    The United States, as sovereign, is immune from suit unless it consents to be sued.

3    *See United States v. Mitchell*, 445 U.S. 535, 538 (1980); *Cato v. United States*, 70 F.3d

4    1103, 1107 (9th Cir. 1995).  The FTCA is a limited waiver of sovereign immunity,

5    rendering the United States liable for certain torts of federal employees.  *See* 28 U.S.C. §

6    1346(b).  The FTCA provides as follows:

7    Subject to the provisions of chapter 171 of this title, the district
     courts . . . shall have exclusive jurisdiction of civil actions on claims against
8    the United States, for money damages, accruing on and after January 1,
     1945, for injury or loss of property, or personal injury or death caused by
9    the negligent or wrongful act or omission of any employee of the
     Government while acting within the scope of his office or employment,
10   under circumstances where the United States, if a private person, would be
     liable to the claimant in accordance with the law of the place where the act
11   or omission occurred.

12   28 U.S.C. § 1346(b)(1).

13   Among the exceptions to the FTCA waiver of sovereign immunity is the

14   "discretionary function exception."  This exception excludes:

15   Any [§ 1346] claim based upon an act or omission of an employee of
     the Government, exercising due care, in the execution of a statute or
16   regulation, whether or not such statute or regulation be valid, or based upon
     the exercise or performance or the failure to exercise or perform a
17   discretionary function or duty on the part of a federal agency or an
     employee of the Government, whether or not the discretion involved be
18   abused.

19   28 U.S.C. § 2680(a).  "The discretionary function exception insulates certain

20   governmental decision-making from judicial second guessing of legislative and

21   administrative decisions grounded in social, economic, and political policy through the

22   medium of an action in tort."  *Myers v. United States*, 652 F.3d 1021, 1028 (9th Cir.

2011) (internal citations omitted).  "The government bears the burden of proving that the discretionary function exception applies."  *Id.*

A two-step test is used to determine whether the discretionary function applies.  *Terbush v. United States*, 516 F.3d 1125, 1129 (9th Cir. 2008) (citing *Berkovitz v. United States*, 486 U.S. 531, 536–37 (1988)).  In the first step, the court determines "whether challenged actions involve an element of judgment or choice."  *Id.* (quoting *Berkovitz*, 486 U.S. at 536).  If the challenged actions do involve an element of judgment or choice, then the court turns to the second step in the test.  *Id.*  The second step requires the court to decide "'whether that judgment is of the kind that the discretionary function exception was designed to shield,' namely, 'only governmental actions and decisions based on considerations of public policy.'"  *Terbush*, 516 F.3d at 1130 (quoting *Berkovitz*, 486 U.S. at 536–37).  The exception applies even if the decision is an abuse of discretion.  *Id.*

"Whether a challenged action falls within the discretionary function exception requires a particularized analysis of the specific agency action challenged."  *GATX/Airlog Co. v. United States*, 286 F.3d 1168, 1174 (9th Cir. 2002).  Thus, before turning to *Berkovitz*'s two-step inquiry, the court must first identify plaintiff's "specific allegations of agency wrongdoing."  486 U.S. at 540.  "To identify the particular agency conduct with which Plaintiffs take issue, we look to the allegations of Plaintiffs' complaint."  *Young v. United States*, 769 F.3d 1047, 1053 (9th Cir. 2014).

In his complaint, Romans alleges that "the United States Postal Service failed to provide supervision of the transfer procedure on September 17, 2010 . . . ."  Comp., ¶ 5.6.  The complaint also alleges as follows:

1        In addition, the United States Postal Service in Silverdale, though [sic] its employees' actions, failed to ensure that that [sic] the loading area where Daniel Romans was located was secured and doors were locked to prevent thieves and assailants from entering onto the property.

        Moreover, the United States Postal Service knew that Daniel Romans had no choice but to enter the loading dock area in order to perform his job duties. Despite this knowledge, the United States Postal Service failed to take reasonable precautions to make the common area of the worksite safe for him.

        The United States Postal Service, through its employees, also breached its common law duty to Daniel Romans and is, therefore, liable for injuries sustained by him at the hands of third persons. It was, or should have been, aware of the easily foreseeable potential danger posed by such persons, where the register bags were involved. The United States Postal Service failed to protect the valuable mail being transferred.

*Id*., ¶¶ 5.7–5.9.  Based on these allegations, the Court concludes that Romans takes issue with the postal service's failure to either supervise or provide a safer area for after-hours transfer procedures.  The Court now turns to the two-step inquiry.

### a.    Judgment or Choice

In the first step, the court determines "whether challenged actions involve an element of judgment or choice."  *Terbush*, 516 F.3d at 1130 (quoting *Berkovitz*, 486 U.S. at 536–37).  Under this step, the court considers the "nature of the conduct, rather than the status of the actor . . . ."  *Id*.  "The discretionary element is not met where 'a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow.'"  *Id*. (quoting *Berkovitz*, 486 U.S. at 536).  The inquiry ends if there is such a statute or policy directing mandatory and specific action because there can be no element of discretion when an employee "has no rightful option but to adhere to the directive."  *Id*.

1    In this case, the Government contends that there were no statutes or policies

2    governing the safety of the mail transfer procedures.  Specifically, the Government

3    asserts that the relevant postal regulation is as follows:

4          The postmaster or a supervisor designated by the postmaster shall
      act as Security Control Officer for each post office. The Security Control

5          Officer shall be responsible for the general security of the post office, its
      stations and branches, in accordance with rules and regulations issued by

6          the Chief Postal Inspector.

7    39 C.F.R. § 231.2.  With regard to the majority of the actions Romans challenges, neither

8    the Government nor Romans cites any rule or regulation that provides a specific course of

9    conduct regulating after-hour mail drops.

10    The record, however, reflects one action that Postmaster Kleinfelter places on both

11    his employees and HRC drivers, which is locking the gate to the delivery parking lot.

12    The policy with regard to this gate is as follows: if postal employees are in the building,

13    then the gate is open; if the post office closes and there is not an HRC driver in the

14    parking lot picking up deliveries, then the post office employee locks the gate; if an HRC

15    driver is in the parking lot when the post office closes, then the HRC driver locks the gate

16    when he or she leaves; if the post office is closed when the HRC driver arrives, then it is

17    the responsibility of the HRC driver to unlock and lock the gate.  Kleinfelter Dec. at 19–

18    20.  The Court concludes that this action does not involve any element of judgment or

19    choice and is simply a task that should be completed.  Therefore, the inquiry ends as to

20    the specific action of locking the gate.

21    On the other hand, the Court concludes that all of the other actions Romans

22    challenges involve discretion.  For example, Romans challenges the placement of the

Connex container, whether the container should always be locked and secured, whether additional employees should be present when the HRC drivers arrive, whether the postal property should be inspected and cleared every night, and other similar security measures. There is no evidence in the record to show that a statute, regulation, or policy specifically prescribes a course of action for an employee to follow. *Terbush*, 516 F.3d at 1130. Therefore, the Court concludes that the Government has met its burden on the first prong of the analysis for every challenged action except for locking the perimeter gate.

### b.   Public Policy

The second step requires the court to decide "'whether that judgment is of the kind that the discretionary function exception was designed to shield,' namely, 'only governmental actions and decisions based on considerations of public policy.'" *Terbush*, 516 F.3d at 1130 (quoting *Berkovitz*, 486 U.S. at 536–37). The exception applies even if the decision is an abuse of discretion. *Id*.

On this issue, the Government cites a number of cases regarding security at post offices in which the courts found that such decisions were based on public policy considerations. Dkt. 22 at 8–9. For example, in *Hughes v. United States*, 110 F.3d 765, 766 (11th Cir. 1997), the court considered whether the exception applied to a claim by a post office patron who was shot while sitting in her car in the post office parking lot. The court concluded that "[d]ecisions involving security at post offices are a fundamental part of the economic and social policy analysis required to achieve" the goals of "provid[ing] prompt, reliable, and efficient services to patrons in all areas and [rendering] postal services to all communities." *Id*. at 768. Moreover, the Ninth Circuit cited *Hughes* in a

case concerning a claim that the post office was liable to a patron for injuries sustained

after the post office unwittingly delivered a mail bomb.  *Gager v. United States*, 149 F.3d

918, 919 (9th Cir. 1998).  In *Gager*, the court held that the exception applied because the

post office weighed the "policy of safety" against the "many economic concerns

attendant to any training program."  *Id*. at 921.

In light of this precedent, the Government offers the same public policy concerns

of public safety versus costs of additional security measures.  For example, Postmaster

Kleinfelter declares as follows:

> The Postal Service's primary mission is to promptly, efficiently, and
> reliably deliver the mail. In order to do so, we need to assess the most
> efficient allocation of personnel and resources to meet our primary mission,
> taking into consideration the safety of personnel and the public as well.
> During the relevant period, the Silverdale Post Office had, at most, only
> two EAS employees to cover a large window of operation (from 4:30 a.m.
> to approximately 5:45 or 6:00 p.m. Monday through Friday). The last HCR
> pick up did not occur until after 6:00 p.m., with the driver usually leaving
> Silverdale no earlier than 6:40 p.m. Sometimes, for a variety of reasons, the
> last HCR pick up was not on schedule. If we staggered the work day of the
> EAS employees so that an EAS employee was present during the last HCR
> dispatch, that would mean that there would be times during extremely busy
> periods of the day that only one EAS employee was on site to supervise and
> ensure that the mail was processed and delivered and the needs of our
> patrons met. On the other hand, if we required an EAS employee or any
> employee to work from 4:30 a.m. until the HCR driver arrived for the last
> dispatch of the day, Postal Service resources would be allocated to pay
> overtime, impacting our budget. In light of the fact that the Silverdale Post
> Office was located in a relatively safe area and we had experienced
> minimal criminal activity over the years, the balance tipped in favor of
> allocating scarce resources to our primary mission, delivering the mail and
> providing services to our patrons.

1   Kleinfelter Dec., ¶ 5.  Based on this declaration, the Government has met its burden to

2   show that security measures at the post office are based on considerations of public

3   policy.

4        Romans, however, argues that "[t]here can be no assertion of discretionary

5   immunity where there was no actual decision made."  Dkt. 31 at 16.  Specifically,

6   Romans argues that,

7        [b]ecause the temporary Postmaster, Mr. Kleinfelter, never even
         considered any options regarding security for Mr. Romans and his crew,
8        there is no decision here to analyze, and therefore no grounds for the
         application of the discretionary immunity analysis.

9
10  *Id*. at 17.  The Government argues that this is simply "not the law."  Dkt 34 at 5.  The

11  Court agrees.  It would seem that failure to make a decision would be considered an

12  abuse of discretion, which still falls under the exception.  Regardless, Romans bases his

13  proposition on cases in which the Government failed to offer public policy considerations

14  at all instead of merely failing to make a discretionary decision.  *See Gotha v. United

15  States*, 115 F.3d 176 (3d Cir. 1997); *Bolt v. United States*, 509 F.3d 1028 (9th Cir. 2007).

16  Therefore, the Court grants the Government's motion to dismiss as to the majority of the

17  actions Romans challenges.

18        The Court, however, finds that the Government has failed to meet its burden as to

19  two specific decisions: (1) placement of the Connex container and (2) whether the

20  container should be locked.  These decisions are "'totally divorced' from the policies that

21  the government has identified as the basis for its decision."  *Young*, 769 F.3d at 1057

22  (citing *Whisnant*, 400 F.3d at 1181).  While an argument could be made that locking the

Connex container could be covered in the policy decision of allocating resources, there is an absence of evidence in the record to show that locking and unlocking a storage container every time it was accessed would consume resources significant enough to interfere with the delivery of the mail.  Moreover, there is an absence of evidence in the record to show that the decision of where to place the container would also consume significant resources.  Therefore, the Court denies the Government immunity as to these two actions.

**B.     Summary Judgment**

In the alternative, the Government moves for summary judgment on the merits of Romans's negligence claim.  The Court will address these arguments with respect to the three surviving actions: securing the perimeter gate, placement of the Connex container, and locking the Connex container.

**1.     Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986) (nonmoving party must

present specific, significant probative evidence, not simply "some metaphysical doubt").

*See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists

if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The

Court must consider the substantive evidentiary burden that the nonmoving party must

meet at trial – e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477

U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual

issues of controversy in favor of the nonmoving party only when the facts specifically

attested by that party contradict facts specifically attested by the moving party.  The

nonmoving party may not merely state that it will discredit the moving party's evidence

at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W.*

*Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory,

nonspecific statements in affidavits are not sufficient, and missing facts will not be

presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

## 2.    Negligence

Pursuant to the FTCA, the Government is liable "if a private person would be

liable to the claimant in accordance with the law of the place where the act or omission

occurred."  28 U.S.C. §1346(b).  As the incident which is the basis of the action occurred

in Washington, the law to be applied in this case is the substantive law of Washington.

1    *Richards v. United States*, 369 U.S. 1, 11(1961).  In Washington, to support a claim for

2    negligence, a party must prove (1) the existence of a duty owed to the injured party; (2) a

3    breach of that duty; (3) a resulting injury; and (4) that the claimed breach is the proximate

4    cause of the injury.  *Hansen v. Friend*, 118 Wn.2d 476, 485 (1992).

5        In this case, the Government argues that Romans fails to show both breach of a

6    duty and proximate cause.  First, the Government contends that Romans has failed to

7    submit any admissible evidence that a post office employee failed to close the gate on the

8    night of the incident.  Dkt. 22 at 11.  The Court agrees.  On one hand, the Government

9    has submitted the declaration of the postal clerk on duty that night, Kimmarie Ryan.  Ms.

10   Ryan declares that her "best recollection is that no HCR truck was present [when she] left

11   that night, and thus [she] locked the gate."  Dkt. 29, Declaration of Kimmarie A. Ryan, ¶

12   3.  While this is equivocal testimony, it shifts the burden to Romans to submit admissible

13   evidence contesting this fact.  *Anderson*, 477 U.S. at 253.  Romans, however, has only

14   produced hearsay, which is not admissible evidence.  Romans testified that his employee,

15   Carey Underwood, told Romans that "he left before the [postal] personnel left . . . ."  Dkt.

16   32 at 18.  An "affidavit's hearsay assertions that would not be admissible at trial if

17   testified to by the affiant is insufficient to create a genuine issue for trial."  *Patterson v.*

18   *County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004).  Romans's hearsay assertion is

19   insufficient to create a genuine issue for trial.  Therefore, in the absence of admissible

20   evidence on this issue, the Court grants the Government's motion for summary judgment.

21       Second, Romans fails to show that the location of the container is the proximate

22   cause of his injuries.  "Cause in fact concerns 'but for' causation, events the act produced

1    in a direct unbroken sequence which would not have resulted had the act not occurred."

2    *Hertog v. City of Seattle*, 138 Wn.2d 265, 282-83 (1999).  The question of cause in fact is

3    normally left to the jury; however, if "reasonable minds could not differ, th[is] factual

4    question[ ] may be determined as a matter of law."  *Id*. at 275.  On this issue, Romans

5    fails to show that, but for the location of the Connex container the night of the incident,

6    he would not have been robbed.  At most, the postal inspector's report shows that the area

7    would be safer if the container was placed against the brick wall.  It does not show that a

8    robbery could not happen if the containers were relocated or that the assailants in this

9    case hid behind the containers and waited for Romans to arrive.  Therefore, the Court

10   grants the Government's motion on this issue because reasonable minds could not differ

11   that, but for the placement of the container, Romans would not have been assaulted.

12        Finally, Romans fails to submit any evidence that the containers were unlocked on

13   the night of the robbery.  This absence of evidence turns his theory into pure speculation.

14   "Argument without evidence is hollow rhetoric that cannot defeat summary judgment."

15   *Teamsters Local Union No. 117 v. Washington Dep't of Corr.*, ___ F.3d ___, 2015 WL

16   3634711, at *13 (9th Cir. June 12, 2015).  There is simply insufficient evidence to create

17   a question of fact as to whether the Connex container had any role in the robbery.

18   Therefore, the Court grants the Government's motion on this issue and grants the motion

19   in full.

20

21

22

ORDER - 14

1

## IV. ORDER

2        Therefore, it is hereby **ORDERED** that the Government's motion to dismiss and

3   for summary judgment (Dkt. 22) is **GRANTED** as stated herein. The clerk shall close

4   this case and enter judgment for the Government.

5        Dated this 27th day of July, 2015.

6

7        _____

8        BENJAMIN H. SETTLE
         United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22